382 F.2d 1
 STANDARD FINANCIAL CORPORATION, a New York corporation,
Plaintiff-Appellee,
v.
AUTOMATIC FOODS CORPORATION, an Illinois corporation,
Robo-Matic Vending, Inc., an Illinois corporation, Jack E.
Trost and Harold J. Carlsen, Defendants, and Percy J.
Preston and Harry E. Sloan, Defendants-Appellants.
 No. 15938.
 United States Court of Appeals Seventh Circuit.
 Aug. 9, 1967, Rehearing Denied Sept. 15, 1967.
 
 Michael Levin, Michael M. Kachigian, Donald A. Mitchell, Chicago, Ill., for appellants.
 Edward Rothbart, Thomas E. Moran, Joseph Stein, Chicago, Ill., for appellee.
 Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Percy J. Preston and Harry E. Sloan, defendants, appeal from a judgment of the district court against them for $154,179.63 with interest and costs of suit, in favor of Standard Financial Corporation, a New York corporation, plaintiff. Their attorneys in their brief state that the court made a finding that malice was the gist of the action.
 
 
 2
 Named as additional defendants were Automatic Foods Corporation and Robo-Matic Vending, Inc., Illinois corporations, as well as Jack E. Trost and Harold J. Carlsen.
 
 
 3
 In this action plaintiff seeks damages which it charges were caused by Sloan and Preston, directors and shareholders of Robo-Matic, which had guaranteed payment of obligations to be paid to plaintiff. It relies on said defendants' distribution to themselves of all of the assets of Robo-Matic.
 
 
 4
 There is substantial evidence in the record supporting findings of fact by the district court to the effect that (1) Automatic Foods on July 24, 1958 entered into an agreement with plaintiff guaranteeing prompt payment of chattel mortgages and lease obligations sold to it by Automatic, (2) defendants Trost, Sloan and Preston guaranteed 10% Of said payment by Automatic to plaintiff, and (3) Robo-Matic guaranteed the payment by Automatic of all monies to be paid by Automatic to plaintiff. Such evidence also supports the court's findings that plaintiff relied upon said guaranties in purchasing chattel mortgages and lease obligations from Automatic and that Sloan and Preston each owned 50% Of Robo-Matic's stock, as well as 30% Of the stock of Automatic and each was a director of both corporations when the guaranty of Robo-Matic was given and plaintiff purchased from Automatic chattel mortgages and lease obligations.
 
 
 5
 On August 19, 1958, Robo-Matic filed with the secretary of state of Illinois a statement of intent to dissolve by voluntary consent of stockholders pursuant to Illinois law and it was certified to the attorney-general for involuntary dissolution on November 16, 1959 for failure to file an annual report and pay franchise taxes. Robo-Matic did not mail to plaintiff a statement of intent to dissolve as required by law.
 
 
 6
 Between October 1958 and July 1959, Robo-Matic distributed in cash to defendant Preston $112,346.20 and to defendant Sloan $132,118.20. In September, 1959 it distributed to Preston an additional $20,000 in cash. Sloan and Preston were directors and shareholders of Robo-Matic at the time of these distributions. Robo-Matic is insolvent and has no assets.
 
 
 7
 However, in this court, counsel for Preston and Sloan argue that plaintiff did not purchase commercial paper from Automatic until February 26, 1959, and that Robo-Matic's liability, if any, did not arise until then, and that the liability of Sloan and Preston did not arise until the default of Automatic on July 1, 1959. They pursue their theory further by saying that consequently their acts in October 1958 in withdrawing the principal assets of Robo-Matic 'before the existence of a creditor-debtor relation' between plaintiff and any defendants did not give rise to any liability on their part and certainly were not such acts as to charge them with malice. We reject this argument.
 
 
 8
 Under Illinois law a more realistic view is taken of the right of a creditor. In Dunnigan v. Stevens, 122 Ill. 396, at 403-404, 13 N.E. 651, at 653-654 (1887), the court remarked:
 
 
 9
 'It is again said, the maker might pay the notes at maturity, and so the indorser not have them to pay. But this would not be inconsistent with the indorser's liability for the payment of the notes.
 
 
 10
 'The same might be said in respect of a surety or a guarantor, that the principal debtor might pay the debt on its coming due; yet that would not militate against the previous obligation of the surety or guarantor to pay the debt. * * *'
 
 
 11
 Thus in the case at bar the record shows that plaintiff relied on the guarantor Robo-Matic. On the facts of this case we fail to see how voluntary dissolution of Robo-Matic by Sloan and Preston, accompanied by a distribution of its assets to them as shareholders, can be permitted to defeat the rights of plaintiff. We cannot believe that Illinois law tolerates such a blatant disregard by Sloan and Preston of their and Robo-Matic's guaranties. We agree with the conclusion of the district court that they acted fraudulently and with malice and that Sloan and Preston are liable to plaintiff for its loss and damage arising therefrom.
 
 
 12
 We affirm the judgment of the district court.
 
 
 13
 Judgment affirmed.
 
 
 14
 KNOCH, Circuit Judge (dissenting).
 
 
 15
 At the time of the making of the agreement here in question, Standard Financial Corporation, the plaintiff, was under no obligation to buy any commercial paper from Automatic Foods Corporation. There was no showing that any such paper was in fact purchased from Automatic Foods Corporation until long after the statement of intent to dissolve Robo-Matic Vending, Inc., the guarantor. The Business Corporation Act of Illinois, on which the majority relies, requires notice of intent to dissolve by voluntary act of the shareholders to be mailed to each known creditor of the corporation.
 
 
 16
 On the record before us there was a purely executory agreement here. There was no creditor-debtor relationship between Standard Financial Corporation and Automatic Foods Corporation, let alone between Standard Financial Corporation and Robo-Matic Vending Inc., as to require notice of the subsequently abandoned dissolution.
 
 
 17
 In Dunnigan, unlike here, the only uncertainty was whether the maker would pay the already existing note at maturity, so that the indorser would never be called on to pay it. I would reverse the judgment of the District Court.